UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE PAINTERS UNION DEPOSIT FUND, | Case No. 22-12471 |
| Plaintiff, | F. Kay Behm<br>United States District Judge |
| v. | |
| G&T COMMERCIAL COATINGS, INC., | |
| Defendant. | |
| _____ / | |

**OPINION AND ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT AND TO COMPEL AUDIT (ECF No. 13)**

**I.   PROCEDURAL HISTORY**

Plaintiff, Trustees of the Painters Union Deposit Fund (the Trustees), filed this ERISA action against Defendant, G&T Commercial Coatings, Inc. (G&T) to compel a comprehensive audit of G&T's accounts and record to determine if any additional payments are due and owing for fringe benefits, pursuant to the Collective Bargaining Agreement (CBA).  (ECF No. 1).  The Trustees filed a motion for partial summary judgment and to compel an audit, which is fully briefed.  (ECF Nos. 13, 16, 19).  The Trustees seek an order requiring G&T to comply with the comprehensive audit and produce all documents and information requested by the funds' auditor, an order allowing the Trustees to directly subpoena G&T's

bank records or other documents in the hands of third parties that fall under the scope of the audit request, and finally, the Trustees request an award of fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g).  The court held a hearing, via videoconference, on October 25, 2023.  (ECF No. 14).

For the reasons set forth below, the court **GRANT**S Plaintiff's motion for partial summary judgment and to compel an audit.

## II.     FACTUAL BACKGROUND

The CBA obligates G&T to make periodic payments to the Trustees for various employee benefit funds established under the collective bargaining agreement.  (ECF 13-2, CBA Art. XX, Sec. 1).  These payments represent a portion of wages earned by G&T employees who work within the jurisdiction of the Painters Union.  The fund was created to coordinate the activities of the various employee benefit funds on behalf of the Painters Union, including the collection of contributions thereto and the collection of delinquencies.  (ECF No. 13-3, Zacny Dec. ¶ 1).  The CBA and employee benefit fund trust agreements require G&T to submit monthly reports detailing the amount of contributions that G&T is obligated to pay, and further require that all payments to the various fringe benefit funds be made on a timely basis.  (ECF No. 13-1, CBA Art. XX, Sec. 1). The CBA prohibits G&T from subcontracting work covered by the agreement to any

individual or entity which is not a signatory to the CBA and provides that any such work performed through a subcontractor is subject to the terms and conditions of the CBA. *Id*. Art. XII, Sec. 1 & Art. XIII. The "Work" that may not be subcontracted under the above provision is a term which is broadly defined in Art. I, Sec. 2 of the CBA. *Id*., p. 1. The CBA provides for two general types of audits of an Employer. Article XX, Section 2 of the CBA and the Fund's procedures provide for regular payroll audits of Defendant's payroll records by the Fund auditor. (ECF No. 13-3, Zacny Dec. ¶ 4). Section 2 also provides for a comprehensive audit of G&T's records and accounts when ordered by the Fund's Board of Trustees, to ascertain whether G&T has complied with the requirements of the CBA. This type of audit is more comprehensive than the annual audits of employers' payroll records. Comprehensive audits include examination of general check (e.g., non-payroll) ledgers, disbursement records, and bank accounts, that are more likely to disclose payments to persons or subcontractors in violation of the CBA. *Id*. ¶ 4. Specifically, the CBA provides:

> SECTION 2: Audits and Inspections. Each Employer, signatory to this Agreement, hereby authorizes and empowers any accountant selected by the Trustees of any said Funds to make regular audits of the Employer's payroll records to ascertain whether the Employer has complied with the requirements of this Agreement. Each Employer, signatory to this Agreement, hereby further authorizes and empowers any accountant

3

>   selected by the Trustees of any said Funds to have
>   access to, and to inspect any and all books, records,
>   accounts, ledgers, and records of original entry, for the
>   purpose of determining whether or not the Employer
>   has conformed with the provisions of this Agreement.
>   Such inspection shall be made only on an express order
>   of the Board of Trustees. . . .

(ECF No. 13-2, CBA, Art. XX, Sec. 2). According to the Trustees, G&T has a history of being habitually late with contribution so the Funds, pointing to a 2014 lawsuit that eventually resulted in a $155,000 payment agreement. (ECF No. 13-5). The Trustees also say that annual payroll audits of G&T have repeatedly disclosed contribution shortfalls. (ECF No. 13-3, Zacny Dec. ¶ 6).

Before filing this lawsuit, the Trustees attempted to obtain the documents necessary for the audit, requesting timekeeping records, payroll records, canceled checks, employee earnings records, W-2 and W-3 forms, Social Security Quarterly report (form 941) and canceled checks in support, Quarterly Michigan Employment UIA Tax Return and canceled checks in support, student permits and letters of indenture concerning apprentices, check registers (including bank check registers with copies of canceled checks, and all records of disbursements (cash receipts, sales journals, and general ledger), and U.S. Information Form 1096 with attached form 1099s. (ECF No. 13-6, Letter dated 8/2/22). G&T objected to the breadth of the requests, but provided payroll records, 941 forms, W-2s, and

4

Unemployment reports. (ECF No. 13-7, Letter dated 9/22/22). This lawsuit was then filed on October 14, 2022.

After the Trustees filed suit, the parties continued to negotiate regarding the document production. G&T explained that it does not maintain a general ledger or a check register and said that it had produced all subcontractor agreements and canceled checks. (ECF No. 13-11, Letter dated 11/20/22). In response, the Trustees requested a <u>certified response</u>: (1) confirming whether G&T subcontracted out any work during the audit period; (2) providing any subcontractor agrees relating thereto; (3) all 1099s and 1096s for the audit period; (4) checks for the months of August 2021, March 2002 and August 2022 to the present; (5) full and complete bank statements as only partial statements were provided; (6) providing a general ledger for the audit period or confirming that no such ledger can be provided. (ECF No 13-12, Letter dated 12/2/22). In response, (1) G&T maintained that all subcontractor agreements were provided, (2) G&T provided one 1099, (3) G&T asserted that bank account statements were not part of the records required to be provided; (4) G&T provided additional canceled checks for August and September 2022 and said that canceled checks for

5

August 2021 and March 2022 were provided; and (5) G&T again stated that it did not have a general ledger.  (ECF No. 13-14, Letter dated 5/16/23).[1]

As explained in the Trustees' opening brief, the auditor noted several items after reviewing G&T's May 16, 2023 letter:  (1) no 1096 form was produced, which would confirm that only a single 1099 for the audit period existed; (2) bank records are necessary to complete the audit because there are no general ledgers or check copies; (3) monthly statements showing canceled checks for August 2021 and March 2022 have not been produced.  (ECF No 13-3, Zacny Dec. ¶ 22).  In response, G&T says that the Trustees never requested any "sworn statements," that it has now provided the 1096 request (ECF No. 16, Ex. J); its offer of the bank statements in exchange for withdrawal of the motion was refused; and it provided canceled checks for August 2021 and March 2022.  (ECF No. 16, PageID.191-92).  G&T also offers the unsworn declaration of its office manager, which states that:  G&T does not maintain a general ledger or maintain QuickBooks; G&T has produced copies of all canceled checks that were requested; and G&T has produced all subcontracts for the audit period.  *Id*. at 240.

In reply, the Trustees maintains that it requires complete bank statements and check copies and requests an order requiring G&T to produce such records

---

[1] The date on the letter indicates May 22, 2022, but this appears to be an error.

without redaction and allow Trustees to obtain them directly from the bank pursuant to subpoena. As to the 1099 and 1096 forms, G&T only produced the 1096 and 1099 form for 2022 but has produced nothing for 2020 or 2021 or affirmed that none exist. Trustees also finds fault with G&T's "unsworn declaration" of its office manager (ECF No. 16, PageID.240), given that it does not contain a handwritten signature as required by Rule 10(d) of the Electronical Filing Policies and Procedures for the Eastern District of Michigan, it does not provide that the declarant has adequate foundational knowledge regarding tax and accounting records, and its statements are vague and conclusory.

Before the hearing in this matter, G&T submitted a supplemental unsworn declaration and produced additional documents. (ECF No. 21). At the hearing, Trustees clarified that three areas of concern remain at issue: (1) the auditor still requires complete bank records for the audit period and Trustees would like to obtain those records via subpoena to the bank; (2) the auditor identified seven checks that raise issues regarding subcontractor agreements and the supplemental declaration only addresses two of those seven checks; and (3) Trustees seeks a subpoena for Lyon Maintenance, LLC, a company owned by the wife of G&T owner regarding certain subcontracting documents.

### III. ANALYSIS

    A.    <u>Legal Standards</u>

        *1.    Summary Judgment Standard of Review*

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to

the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

    2.    ERISA

G&T does not dispute that the Trustees of the Funds may enforce the terms of the CBA as a third-party beneficiary trustee. *See* 29 U.S.C. § 1132(d)(1)(An employee benefit plan may sue or be sued under this subchapter as an entity."); *Anderson v. AT & T Corp.*, 147 F.3d 467, 473 (6th Cir. 1998) ("We have long recognized that the plaintiff can recover for the employer's breach of a collective bargaining agreement if the plaintiff is a third-party beneficiary of the

10

agreement"); *Board of Trustees of Ohio Laborers' Fringe Benefit Programs v. Bihn Excavating, Inc.*, No. Civ. A. 2:03-CV-875, 2005 WL 1421953 at *3 (S.D. Ohio 2005) ("Because plaintiffs are third-party beneficiaries of the collective bargaining agreement, they are entitled to enforce it."). This right of enforcement under ERISA includes the right to audit set forth in the CBA and quote above. *See Cent. States Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 584 n. 4 (1985) (In action brought under ERISA and LMRA § 301, the Supreme Court held that multiemployer funds are empowered to conduct random audits of signatory employers, as provided for in fund trust agreements in that case); *see also*, *DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir. 1989).

B.     Submission to Audit and Document Request

It is well within the court's powers to require a party to submit to an audit and pay the costs of such audit. *R.G. Zachrich Const., Inc. v. Loc. 1581, Ohio & Vicinity Reg'l Council of Carpenters*, 2008 WL 4159848, at *6 (N.D. Ohio Aug. 28, 2008) (citing *Trustees of the B.A. C. Local 32 Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 970 (6th Cir. 1998) (affirming an order "to supply all records requested by the Trustees, to submit to an audit, and to pay the deficiencies and any other amount due pursuant to the 1991 agreement."); *Trs. of Painting Indus. Ins. Fund v. Pharaoh Glass Sys.*, 2008 WL 276412, *6 (N.D. Ohio 2008) ("The Court GRANTS

11

Plaintiff's request that [d]efendant pay for the cost of the audit if the audit reveals a "substantial deficiency" or that [d]efendant overpaid the Fund, as provided by Section [twelve] of the CBA to which [d]efendant is contractually bound.")). G&T does not deny such authority but argues that it has already sufficiently complied with all proper requests pertaining to the audit. The court disagrees, as explained in more detail below.

    G&T's claim that the documents requested here (complete bank records) is a mere "fishing expedition" and not authorized by the CBA is not well-taken. According to G&T, the documents requested are not limited to those documents necessary to determine "whether or not the Employer has conformed with the provisions of this Agreement." (ECF No. 13-1, CBA, Art. XX, Sec. 2). G&T does not, however, explain why this is so and does not refute Trustees' position that bank records fall within the scope of "any and all books, records, accounts, ledgers, and records of original entry" as set forth in the CBA. (ECF No. 13-2, CBA, Art. XX, Sec. 2). Instead, G&T's argument seems to suggest that because bank records were not included in the *original* document request for the audit, the Trustees are somehow precluded from later requesting them or this renders their request to be made in bad faith. But G&T does not provide any authority for this argument. More importantly, G&T does not refute the Trustees' stated reason for needing

the bank records: G&T does not have either a general ledger or a check register. It seems fundamental that if a business has neither a general ledger nor a register, complete bank records, including all statements and canceled checks, are critical to conduct even a rudimentary audit. Accordingly, the Trustees are entitled to complete and accurate bank statements and copies of all canceled checks for the audit period. The motion for summary judgment to compel the audit is granted, along with the request for these records.

  C. <u>Subpoenas</u>

The Trustees request permission to issue subpoenas to obtain G&T's bank records and "other documents in the possession of third parties" that fall within the scope of the audit request. Given the lack of any general ledger or check register, and the ongoing difficulty in obtaining complete bank records from G&T, the court will **GRANT** the request for the bank subpoena to Chase Bank for the period of December 17, 2020 through October 31, 2023. Additionally, Trustees clarified at oral argument that it also seeks a subpoena for Lyon Maintenance, LLC, a company owned by the wife of G&T's owners. The court will also allow Trustees to issue the subpoena to Lyon Maintenance for records pertaining to payments between G&T and Lyon Maintenance and any subcontractor

agreements between G&T and Lyon Maintenance for the period of December 17, 2020 through October 31, 2023.

    D.    <u>Attorney Fees and Costs</u>

Lastly, Trustees seek attorney fees under ERISA, 29 U.S.C. § 1132(g). This request appears to be premature, given that this issue is not fully briefed at this point and cannot be fully briefed because litigation is ongoing. *Trustees of the Painters Union Dep. Fund v. Interior/Exterior Specialists Co.*, 2007 WL 951410, at *3 (citing *Grier v. Goetz*, 421 F.Supp.2d 1061 (M.D. Tenn. 2006) (reserving a ruling on the issue of what constitutes "reasonable attorney fees" because the court had not received Plaintiff's affidavits detailing the amount of fees and expenses requested); *Airline Pilots Ass'n Int'l v. Northwest Airlines Inc.*, 627 F.2d 272, 278 (D.C. Cir. 1980) (vacating the district courts order denying attorney fees as premature and inappropriate at the time litigation was still pending)). Therefore, the court reserves ruling whether either party is entitled to attorney fees.

**IV.    CONCLUSION**

For the reasons set forth above, the court **GRANTS** the motion for partial summary judgment and to compel an audit. More specifically, the court **ORDERS** that:

    1.    G&T must comply with the audit;

2. Trustees may issue a subpoena to Chase Bank for G&T's bank records, including statements and canceled checks, for the period of December 17, 2020 through October 31, 2023.

3. Trustees may issue a subpoena to Lyon Maintenance for records pertaining to payments between G&T and Lyon Maintenance and any subcontractor agreements between G&T and Lyon Maintenance for the period of December 17, 2020 through October 31, 2023.

4. The court will hold a status conference on December 14, at 11 AM.

**SO ORDERED**.

Date: November 1, 2023                        <u>s/F. Kay Behm</u>
                                              F. Kay Behm
                                              United States District Judge